# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

| | |
|---|---|
| For information about the location of the cellular telephone assigned cell number **(909) 507-9464 ("Target Cell Phone B")** )<br>)<br>)<br>)<br>)<br>) | Case No. **20m 815** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956 and 1957

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kellen Williams, DEA SA
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: _____January 10, 2020_____

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin _____ William E. Callahan, Jr. , U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kellen J. Williams, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned cell number **(909) 507-9464 ("Target Cell Phone B")**, whose cell phone provider is T-Mobile, a wireless telephone service provider headquartered in Bellevue, Washington. **Target Cell Phone B** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2.      I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since September 2012. I am currently assigned to the DEA Milwaukee District Office, High  Intensity Drug Trafficking Area ("HIDTA"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.      I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I

1

have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.  I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.  I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.  I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.  I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.  I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4.  I am currently participating in an investigation into the illegal distribution of controlled substances by the online pharmacy 247 Support Online, of which Cinthya MORA is a participating co-conspirator. I am familiar with the facts and circumstances regarding this

2

investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (c) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein.[1] This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.       Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by the usder of **(909) 507-9464**, believed to be Cinthya MORA, and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

**PROBABLE CAUSE**

### Background

6.       On February 17, 2018, the Oconomowoc, Wisconsin Police Department was dispatched to 1346 Bluebird Drive, Oconomowoc, for a subject with a possible self-inflicted gunshot wound. Upon arrival, officers found Stephen Holder ("Holder") deceased in a bedroom of the residence with a self-inflicted gunshot wound. During the death investigation, detectives

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

3

discovered Holder had an addiction to several medications, to include Tramadol, Ambien, Klonopin, and others. Detectives spoke with Holder's girlfriend and ex-wife, and also reviewed Holder's cellular telephone messages, e-mail and internet browsing history. Detectives found that Holder was being contacted by several different online pharmaceutical distributors. The distributors were reaching out to Holder on a regular basis via e-mail, telephone calls, and even text messages. Some of the text messages advised Holder that if he didn't like or couldn't afford some medications, he should just try others.

7.    In March of 2018, detectives with Oconomowoc Police Department contacted the Milwaukee District Office of the DEA, to discuss their aforementioned investigation. Based on this information, the Milwaukee District Office initiated an investigation into the internet pharmacy 247 Support Online, and its affiliates, located at www.247supportonline.com, which advertises for sale controlled and non-controlled pharmaceuticals, including schedule II and schedule IV controlled substances, without requiring a prescription for such substances.

8.    On March 16, 2018, case agents met with the ex-wife of Holder at the Oconomowoc Police Department, who is controlling the estate of Holder. The ex-wife provided written consent to search the cellular telephone and two e-mail accounts belonging to Holder. Furthermore, the ex-wife provided consent for agents to assume the identity of Holder in using Holder's e-mail account to send undercover ("UC") e-mails to online pharmacies previously used by Holder.

9.    On March 19, 2018, while reviewing Holder's e-mail account, at approximately 5:11 p.m., agents observed an incoming e-mail from an individual purporting to be Nicole Adams using e-mail address orders@247supportonline.com. The e-mail subject was "15 OFF!!!!!" and the message stated, "Hi Stephen, We are 24/7 support online, the worlds leading

4

provider for online pharmacies. Please let us know if you need a refill, we have US Tramadol 50MG, 100MG, 200MG, and 225MG, also Soma 350MG/500MG available. Our shipping options are Express $35 (1-2 business days) or Regular shipping for $15 (3-5 business days). You can contact us thru this email address, phone number 888-652-0037 or live chat. *This week we have the 100mg tramadol and 500mg Soma with 15% discount* We are also offering 10% disc on every Holiday, 25% off on your Birthday and different promotions EVERY WEEK!!!!! We will be more than happy to assist you!"

## Controlled Purchase of Tramadol

10. On March 20, 2018, at approximately 9:19 a.m., agents, acting in an undercover capacity, responded to the e-mail from Adams using Holder's account, stating "What's the price on 100mg tramadol with the discount? Regards, Stephen." At approximately 9:30 a.m., Adams replied, "Dear Sthephen (sic), Here are the prices with the discount, please let me know how many you would like to order and if you want Priority or express shipping. 100MG 30 $106.25; 60 $140.25; 90 $165.75; 120 $191.25; 180 $250.75." At approximately 9:42 a.m., the UC replied, "Nicole: I'd be interested in the 180, with express shipping please." At approximately 9:51 a.m., Adams replied, "Great, the total with the express shipping will be $286 and it will be deliver (sic) in 1-2 business days, please confirm your shipping address and if you want to pay with Credit card or bank transfer."

11. On March 21, 2018, at approximately 11:45 a.m., the UC replied, "Hi Nicole: Would it be easier if I deposited the money into your account at a bank of America or well Fargo? Otherwise I'll get the credit card instead and finalize today. Regards, Stephen." At approximately 11:54 a.m., Adams replied, "Hi Stephen, I can give you the information, whatever is easier for you, but if you want to use the Credit card we will process the cards in 1hr so if you

5

want us to ship the packages today you have 1hr to provide us with CC info or 3hrs to make the transfer." At approximately 11:57 a.m., the UC replied, "Ok I can just stop by the wells Fargo near my work and deposit it in your account. Then I can email the receipt to you." At approximately 11:59 a.m., Adams replied, "Perfect, this will be in the information you need: Adriana Chavarria V, Account number: 6926973311, Routing number: 121042882, nachavi@hotmail.com"

12.     At approximately 1:49 p.m., case agents drove to a Wells Fargo in Milwaukee, WI. The UC deposited $286 in Wells Fargo account 6926973311 and obtained a deposit slip. At approximately 1:52 p.m., the UC e-mailed Adams, stating "I attached the deposit slip, please send tracking number. Regards, Stephen." At approximately 1:55 p.m., Adams replied, "Thank you so much, we will email you the tracking number in the next 2 hrs." At approximately 4:21 p.m., agents received an e-mail from "Dany White" at the same e-mail address (orders@247supportonline.com) used by Adams. The e-mail subject is "Tracking numher" and stated, "Dear Stephen, Your order has been shipped and this is your tracking number: EE158651895US."

13.     On March 22, 2018, at the request of DEA agents, the United States Postal Inspection Service ("USPIS") Inspectors intercepted the package bearing tracking number EE158651895US purchased by agents. On this same date, the USPIS transferred custody of the package to agents. Case agents, with consent by Holder's ex-wife, opened the package and discovered 18 foil packs of 10 white pills each labeled Tramadol. The foil packs were labeled "Manufactured in India by HAB Pharmaceuticals & Research Limited." The pills field tested positive for Tramadol. Case agents are aware that Tramadol is a controlled substance,

6

According to records from the Drug Enforcement Administration, case agents are aware that Holder did not have valid prescription for Tramadol.

14.     Analysis of the package revealed it was dropped off at a post office in Rialto, CA on March 21, 2018 and was received at 2:18 p.m. (PST). It was addressed from PC Online, 2800 Cole Ave, Dallas, TX 75204.

15.     Thereafter, in 2018 and 2109, case agents conducted additional undercover purchases of Tramadol, Tapentadol and Carisoprodol from orders@247supportonline.com. In each undercover purchase, the packages were sent from post offices located in Southern California. Were any of the orders tied to the nachavi@hotmail.com address?

## Border Patrol Seizure

16.     On December 23, 2019, Customs and Border Patrol (CBP) intercepted two packages at the Los Angeles International Mail Facility. During a border authority search, one of those packages was found to contain 800 tablets of Tapentadol, declared as supplements. The parcel was addressed to Liftor Computer, 15218 Summit Avenue, #300 617, Fontana, CA 92336, and sent from Singapore. Homeland Security Investigations (HSI) agents obtained the application package from the UPS Store. A review of the application revealed that 15218 Summit Avenue, #300 617, Fontana, CA 92336 is a mailbox owned by Cinthya MORA, Liftor Computer. According to rental records, MORA resides at 6709 Brampton Avenue, Rialto, CA 92736 and a phone number of **(909) 507-9464 (Target Cell Phone B)**. Based on a review of the rental records, MORA provided her California's driver license E3259275 as proof of identity.

17.     A review of Homeland Security databases revealed in 2019, border patrol seized??? fourteen packages containing Tramadol, Tapentadol, and Carisoprodol that were addressed to Liftor Computer, 15218 Summit Avenue, #300 617, Fontana, CA 92336. The total

amount of controlled substances seized in the 14 packages included 11,063 grams of Tramadol, 1,246 grams of Tapentadol and 1,070 grams of Carisoprodol.

18.     As discussed above, nachavi@hotmail.com is the email address associated with the bank account that received payment for the March 2018 controlled buy of Tramadol.

19.     Also in January 2020, an administrative subpoena was issued to T-Mobile, requesting subscriber information and call detail history of **(909) 507-9464 (Target Cell Phone B)**. T-Mobile responded that **(909) 507-9464 (Target Cell Phone B)** is subscribed to Cinthya MORA at 6709 Brampton Ave, Rialto, CA 92376. This account was established on July 7, 2018.

20.     Analysis of the call history of **(909) 507-9464 (Target Cell Phone B)**, revealed the cellular telephone had several telephone communications with UPS Stores in Southern California.

21.     Based upon my training, experience, and familiarity with the investigation, I believe that MORA is using **(909) 507-9464 (Target Cell Phone B)** to communicate with others to further the illegal distribution of controlled substances via the online phamacy. Case agents believe the location information requested will assist in identifying her source(s) of supply, stash locations, and other co-conspirators involved in the organization.

22.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data

8

provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

23.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of **(909) 507-9464 (Target Cell Phone B)**; including by initiating a signal to determine the location of **(909) 507-9464 (Target Cell Phone B)** on T-Mobile's network or with such other reference points as may be reasonably available.

24.     Based on my training and experience, I know that T-Mobile can collect cell-site data about **(909) 507-9464 (Target Cell Phone B)**.

## AUTHORIZATION REQUEST

20.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **(909)**

9

**507-9464 (Target Cell Phone B)** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **(909) 507-9464 (Target Cell Phone B)** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **(909) 507-9464 (Target Cell Phone B)** outside of daytime hours.

10

## ATTACHMENT A

### Property to Be Searched

1.  The cellular telephone assigned cell number **(909) 507-9464 (Target Cell Phone B)**, whose service provider is T-Mobile, a wireless telephone service provider headquartered in Bellvue, WA.

2.  Information about the location of **(909) 507-9464 (Target Cell Phone B)** that is within the possession, custody, or control of T-Mobile.

1

ATTACHMENT B

Particular Things to be Seized

All information about the location of **(909) 507-9464 (Target Cell Phone B)** described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of **(909) 507-9464 (Target Cell Phone B)** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile services, including by initiating a signal to determine the location of **(909) 507-9464 (Target Cell Phone B)** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).